**NATIONWIDE OF FORT WORTH, INC. d/b/a American Homestar Factory Outlet, Appellant,**

v.

**Glen B. WIGINGTON, et al., Appellees.**

No. 10–96–236–CV.

Court of Appeals of Texas, Waco.

May 14, 1997.

Rehearing Overruled June 11, 1997.

John G. Browning, Craig L. Reese, Fletcher & Springer, L.L.P., Dallas, for appellant.

Terry W. Bradley, Keith Bradley, Bradley & Bradley, Cleburne, for appellees.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

Glen B. Wigington and Angela R. Wigington ("the Wigingtons") filed suit against Nationwide of Fort Worth, Inc., d/b/a American Homestar Factory Outlet ("Nationwide") and Redman Homes, Inc. ("Redman") for breach of contract, breach of warranty, and violation of the Deceptive Trade Practices Act. Nationwide filed a motion to compel arbitration which the court denied.

Nationwide brings this interlocutory appeal from the court's denial of the motion to compel arbitration alleging in two points of

error that the court's decision is erroneous because arbitration is mandatory: (1) under the Texas General Arbitration Act (TEX.CIV.PRAC. & REM.CODE ANN. §§ 171.001, *et seq.* (Vernon Supp.1997)); and (2) under Texas common law. We will reverse the judgment.

## FACTUAL BACKGROUND

The Wigingtons purchased a Redman manufactured home from Nationwide in 1995. The Wigingtons executed a retail installment contract/security agreement in which they "agree[d] to purchase the Manufactured Home for the Total Sale Price [of $114,-439]."[1] The contract reflects that this total sale price consisted of a $3,700 downpayment; the amount financed, $37,564.61; and the finance charge, $73,174.39.

The Wigingtons and Nationwide also signed an Arbitration Provision Addendum ("the addendum") which provides in pertinent part:

The parties to the Retail Installment Contract agree that any and all controversies or claims arising out of, or in any way relating to, the Retail Installment Contract or the negotiation, purchase, financing, installation, ownership, occupancy, habitation, manufacture, warranties (expressed or implied), repair or sale/disposition of the home which is subject of the Retail Installment Contract, whether those claims arise from or concern contract, warranty, statutory, property or common law, will be settled solely by means of final and binding arbitration....

....

The parties understand they have the right to have any disputes between them decided in court, but they choose instead to have any such disputes decided by arbitration in order to avoid the burden, expense and uncertainty of the judicial process. THE PARTIES THEREFORE KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL.

After making one payment under the contract, the Wigingtons filed suit against Nationwide and Redman alleging the manufactured home had defective electrical wiring and plumbing. Nationwide filed a motion to compel arbitration pursuant to the addendum, which the court denied.

## THE TEXAS GENERAL ARBITRATION ACT

■ Texas law so favors arbitration that both "our Constitution and statutes provide for the submission of differences to arbitration." *Brazoria County v. Knutson,* 142 Tex. 172, 178, 176 S.W.2d 740, 743 (1943); *Merrill Lynch, Pierce, Fenner & Smith v. Eddings,* 838 S.W.2d 874, 878 (Tex.App.—Waco 1992, writ denied). We accept every reasonable presumption which favors arbitration when deciding whether arbitration is required. *Southwest Health Plan, Inc. v. Sparkman,* 921 S.W.2d 355, 357 (Tex.App.—Fort Worth 1996, no writ).

■ A court is confronted with two issues when deciding whether to compel arbitration: (1) whether a valid arbitration agreement exists, and (2) if so, whether the claims asserted fall within the scope of the agreement.[2] *Eddings,* 838 S.W.2d at 878. The court must compel arbitration if the answer to both questions is affirmative. *Id.* We resolve any doubts concerning the scope of the agreement in favor of arbitration. *Id.* at 880.

## THE ARBITRATION ADDENDUM

The Wigingtons' assert that the addendum is invalid under the terms of section 171.001(b) of the Texas General Arbitration Act ("the Arbitration Act"). TEX.CIV.PRAC. & REM.CODE ANN. § 171.001(b). Section 171.001(b) provides that the Arbitration Act does not apply to:

(b) any contract for the acquisition by ... persons ... of real or personal property, or services, or money or credit where the total consideration therefor to be paid

---

1. The "Total Sale Price" is set forth in the truth in lending disclosures of the contract.

2. The Wigingtons only claim that the addendum is invalid. They do not otherwise contend that the causes of action alleged in their Original Petition fall outside the scope of the addendum.

... by the individual is $50,000 or less, unless said individual and the other party or parties agree in writing to submit to arbitration and such written agreement is signed by the parties to such agreement and their attorneys. ...

TEX.CIV.PRAC. & REM.CODE ANN. § 171.001(b).

The Wigingtons contend that the addendum is invalid because the total consideration to be paid under the terms of the installment contract is less than $50,000 and their attorney did not sign the addendum. *Id.* Nationwide does not dispute the fact that no attorney signed the addendum with the Wigingtons. Thus, the issue for us to decide is whether the total consideration to be paid under the terms of the installment contract exceeds $50,000. *Id.*

## TOTAL CONSIDERATION TO BE PAID

■ The phrase "total consideration to be paid" is not defined in the Arbitration Act. Thus, we must determine what the Legislature meant when it adopted this language. When the language of the statute is unambiguous, we apply the ordinary meaning of the words being construed. *State v. Public Utility Comm'n*, 883 S.W.2d 190, 200 (Tex. 1994); *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983); TEX.GOV'T CODE ANN. § 312.002(a) (Vernon 1988). In this situation, resort to the rules of statutory construction would be inappropriate. *Cail*, 660 S.W.2d at 815; *but cf.* TEX.GOV'T CODE ANN. § 311.023 (Vernon 1988) (regardless of ambiguity, court may consider rules of statutory construction).

The Wigingtons suggest that the total consideration to be paid under the contract does not include the stated finance charge, $73,174.39. Under this reasoning, the total consideration would be less than $50,000. To support this position, the Wigingtons cite section 152.002(b)(4) of the Tax Code which states that " 'total consideration' does not include[ ] a financ[e] ... charge or interest

on credit extended on a motor vehicle...." TEX.TAX CODE ANN. § 152.002(b)(4) (Vernon Supp.1997). The Wigingtons aver that because the Arbitration Act does not define "total consideration," we can look to other statutes dealing with the same or similar subject matter to ascertain the meaning of this term. *See Brown v. Darden*, 121 Tex. 495, 498, 50 S.W.2d 261, 262 (1932); TEX. GOV'T CODE ANN. § 311.023(4) (Vernon 1988).

■ This argument fails for two reasons. First, because the language of the statute is unambiguous, we should not resort to rules of statutory construction. *See Thiel v. Harris County Democratic Executive Comm.*, 534 S.W.2d 891, 894 (Tex.1976); *Savin Corp. v. Copy Distrib. Co.*, 716 S.W.2d 690, 691–92 (Tex.App.—Corpus Christi 1986, no writ.). And second, assuming *arguendo* we should consider this particular rule of construction, Chapter 152 of the Tax Code does not concern the same subject matter as the Arbitration Act. *Compare* TEX.TAX CODE ANN. §§ 152.001, *et seq.* (Vernon 1992 & Supp. 1997) *with* TEX.CIV.PRAC. & REM.CODE ANN. §§ 171.001, *et seq.*[3] Thus, this rule of construction does not aid us in interpreting the statute. *See Brown*, 121 Tex. at 498, 50 S.W.2d at 262; TEX.GOV'T CODE ANN. § 311.023(4).

Black's Law Dictionary defines consideration as "[t]he inducement to a contract." BLACK'S LAW DICTIONARY 306 (6th ed.1990). Black's also defines "pecuniary consideration" as "[a] consideration for an act of forbearance which consists ... in money to be paid in the future...." *Id.* at 307. Thus, we conclude that the "total consideration to be paid" in an installment contract like the one before us is the total amount of "money to be paid in the future," the promise of which induced Nationwide to sell the manufactured home to the Wigingtons on credit.

The plain language of the installment contract provides additional support to this construction. Under the contract, the Wiging-

---

3. In fact, the motor vehicle sales tax does not apply to manufactured homes. TEX.TAX CODE ANN. § 152.001(3)(C) (Vernon Supp.1997) (motor vehicle includes "a house trailer as defined by the Certificate of Title Act"); TEX.TRANSP.CODE ANN. § 501.002(6) (Vernon Supp.1997) (house trailer

"does not include manufactured housing"); *see also* TEX.REV.CIV.STAT.ANN. art. 5221f, § 19 (Vernon Supp.1997) (portion of Manufactured Housing Standards Act which prescribes the procedure for obtaining title to a manufactured home).

886

tons "agree[d] to purchase the Manufactured Home for the Total Sale Price [of $114,439]."

Because we find that the total consideration to be paid under the installment contract was $114,439, section 171.001(b) of the Arbitration Act does not apply. TEX.CIV. PRAC. & REM.CODE ANN. § 171.001(b). Thus, the court erred in denying Nationwide's motion to compel arbitration. Therefore, we sustain Nationwide's first point.

Because we have sustained Nationwide's first point, we need not address its second point.

We reverse the judgment and remand this cause to the trial court with an order to grant the motion to compel arbitration and abate the cause pending arbitration. *See Sparkman,* 921 S.W.2d at 359; TEX.R.APP.P. 81(c).