TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00361-CV






Patricia Mitchell, Appellant



v.



Philip Mitchell, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 98-00617, HONORABLE PAUL DAVIS, JUDGE PRESIDING 






 In September 1999, Patricia Mitchell and Philip Mitchell were divorced in Travis
County. This post divorce dispute regards their relationship to their six-year-old child. After Philip
filed a first amended petition to modify the parent-child relationship, Patricia filed a motion to
compel arbitration contending that, pursuant to arbitration clauses agreed to and incorporated in their
divorce decree, Philip's claims must be resolved through binding arbitration. The district court
denied her motion and Patricia now brings this accelerated interlocutory appeal. See Tex. Civ. Prac.
& Rem. Code Ann. § 171.098(1) (West Supp. 2001). Patricia contends that the district court erred
in denying her motion to compel arbitration because Philip's claims were within the scope of two
arbitration clauses contained in their divorce decree. We will affirm in part and reverse and render
in part the district court's order.


Standard Of Review

 In reviewing the denial of a motion to compel arbitration, generally the appellate court
applies a legal-sufficiency or no-evidence standard of review. See Certain Underwriters at Lloyd's
of London v. Celebrity, Inc., 950 S.W.2d 375, 377 (Tex. App.--Tyler 1996, no writ). Under either
standard of review, the appellate court considers only the evidence and inferences that, when viewed
in their most favorable light, tend to support the finding under attack, and disregards all evidence and
inferences to the contrary. Id. In this case, however, because no evidence was introduced at the
hearing on the motion to compel arbitration and since the only matter before us is the district court's
legal interpretation of the two arbitration clauses in the divorce decree, de novo review of the district
court's order is appropriate. See Nationwide of Bryan, Inc. v. Dyer, 969 S.W.2d 518, 520 (Tex.
App.--Austin 1998, no pet.) (citing BDO Seidman v. Miller, 949 S.W.2d 858, 860 (Tex.
App.--Austin 1997, writ dism'd w.o.j.)) (no factual issues in dispute only issue is legal interpretation
of arbitration clause). Under these circumstances, this Court may not revise a contract under the
guise of professing to interpret it or to make for the parties a contract different from the one they
entered into. Stahl Petroleum Co. v. Philips Petroleum Co., 550 S.W.2d 360, 368 (Tex. Civ.
App.--Amarillo 1977), aff'd, 569 480 (Tex. 1978). 

 In deciding a motion to compel arbitration, a court considers two issues: (1) is there
a valid arbitration agreement; and (2) does the agreement encompass the claim. Dallas Cardiology
Assocs., P.A. v. Mallick, 978 S.W.2d 209, 212 (Tex. App.--Texarkana 1998, pet. denied); Merrill,
Lynch, Pierce, Fenner & Smith v. Eddings, 838 S.W.2d 874, 878 (Tex. App.--Waco 1992, writ
denied). If the court determines that a valid agreement to arbitrate exists and that the claims raised
fall within the scope of the agreement, the court must compel arbitration and stay proceedings
pending arbitration. Prudential Sec., Inc. v. Banales, 860 S.W.2d 594, 597 (Tex. App.--Corpus
Christi 1993, no writ). In this case, neither party contends that the arbitration clauses are invalid;
the dispute centers on whether the arbitration clauses encompass Philip's claims.

 Because neither party alleged that the arbitration clauses were ambiguous, whether
the arbitration clauses encompassed Philip's claims is a matter of contract interpretation and a
question of law. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); Kline v. O'Quinn, 874 S.W.2d
776, 782 (Tex. App.--Houston [14th Dist.] 1994, writ denied). When interpreting the decree, the
court considers the plain, ordinary, and generally accepted meanings of the words used. W. Reserve
Life Ins. Co. v. Meadows, 261 S.W.2d 554, 557 (Tex. 1953). The court gives effect to the intention
of the parties as expressed in the decree and "the instrument alone will be deemed to express the
intention of the parties, for it is objective, not subjective, intent that governs." City of Pinehurst v.
Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex. 1968). 

 In determining whether the arbitration clauses in the divorce decree encompass
Philip's claims, we review the relevant provisions in the decree and his claims asserted in the first
amended petition to modify the parent-child relationship.


Provisions Of Divorce Decree

 While their divorce action was pending, the Mitchells executed an agreement titled,
"Irrevocable Settlement Agreement On Child-Related Issues," providing for joint managing
conservatorship and assigning possession schedules and particular parental rights. See Tex. Fam.
Code Ann. § 153.133(a) (West Supp. 2001). In September 1999, the district court incorporated this
agreement into the Mitchells' divorce decree.

 The decree declares that the Mitchells are joint managing conservators and
incorporates the terms and conditions of their settlement agreement. The decree sets out the
"geographical area for the primary residence" and declares that "Patricia Mitchell shall have the
exclusive right to establish the primary physical residence of the child," provided 

 

the primary residence of the child shall be within Travis or Williamson County,
Texas, within a 20-mile radius of the City Hall in Round, Rock, Texas. The parties
shall not remove the child from the designated area for the purpose of changing the
primary residence of the child until he or she has complied with the procedure stated
hereinbelow. 


The next paragraph contains the first arbitration clause:

 

Notwithstanding anything to the contrary stated herein, it is ordered, that either party
may, at any time, propose a change in the residence of the child. The proposed
change shall be determined by binding arbitration. 


 The decree next addresses issues related to the parties' periods of possession of the
child. The decree details the parties' rights to possession of the child and then sets out ten specific
issues regarding terms and conditions of their possession. A second arbitration clause then appears:

 

It is ordered that any disagreements between the parties relating to a jointly-shared
right or duty, and/or periods of possession of and access to the child, shall be
resolved through binding arbitration.


 Child support issues and division of the parties' marital estate were decided by the
court and were not part of the Mitchells' irrevocable agreement incorporated into the divorce decree. 


Philip's First Amended Petition To Modify The Parent-Child Relationship

 In March 2001, Philip filed the first amended petition to modify the parent-child
relationship and requested that the court replace the joint conservatorship by naming him sole
managing conservator. See Tex. Fam. Code Ann. § 156.203 (West 1996). Alternatively, Philip
requested that several terms and conditions of the joint managing conservatorship be modified
should the district court deny his request for appointment as sole managing conservator. See Tex.
Fam. Code Ann. § 156.202 (West 1996).


The District Court's Order

 The district court denied Patricia's motion to compel arbitration and found that "its
prior order that required the parties to arbitrate the issues of the child's residence and the parents'
jointly shared rights and duties does not require arbitration of a dispute concerning modification of
conservatorship." 

 Patricia timely filed an accelerated interlocutory appeal from the court's order denying
her motion for arbitration. Patricia contends on appeal that the express language of the arbitration
clauses encompass Philip's request for a change in conservatorship. We review Philip's claims
separately and determine whether each is encompassed by the decree's arbitration clauses.


Change To Sole Managing Conservatorship

 We address first Philip's request that the parties' joint managing conservatorship be
changed to appoint him sole managing conservator. The Family Code distinguishes a modification
that replaces joint conservatorship with sole managing conservatorship from a modification of terms
and conditions under a joint conservatorship. Under the Family Code, a court may replace a joint
managing conservatorship with a sole managing conservatorship if the circumstances of the child
or one of the parties have so materially and substantially changed since the decree that it has caused
the order to become unworkable. See Tex. Fam. Code Ann. § 156.203(1)(C) (West Supp. 2001). 
When changing the entire conservatorship structure, a court must find that the changed
circumstances caused the prior order to become unworkable and that a sole managing conservator
is in the child's best interest. Id. § 156.203(2). When a party seeks to change only the terms or
conditions under a joint managing conservatorship, the court may find either that the order has
become unworkable or inappropriate or the circumstances of the child or one of the parties have
substantially or materially changed and that modifying the terms of the order would be in the best
interest of the child. See Tex. Fam. Code Ann. § 156.202 (West Supp. 2001).

 Patricia argues that Philip's request for a change to sole managing conservator
concerns a change in the child's residence and relates to "a jointly-shared right or duty, and/or
periods of possession of and access to the child." She suggests that any such change in
conservatorship must be resolved by arbitration because the issues specifically addressed in the
arbitration clauses will be involved in a change of conservatorship. She argues that there is no
language in either arbitration clause that limits their application to disputes arising under the joint
managing conservatorship. 

 Philip conversely argues that the two arbitration clauses are narrowly drafted clauses
and evidence the parties' intent to be exclusive rather than inclusive. Philip contends that the clauses
do not encompass his requested change to a sole managing conservatorship because neither
provision states that the parties will resolve "all disputes" regarding the child by arbitration. (1) See
cf. BWI Companies, Inc. v. Beck, 910 S.W.2d 620, 624 (Tex. App.--Austin 1995, orig proceeding). 
Philip argues that the issue of a change from joint managing conservatorship to sole managing
conservatorship falls outside the scope of the decree's arbitration clauses. 

 Patricia relies upon the holdings in Merrill Lynch, Pierce, Fenner & Smith, Inc. v.
Longoria, 783 S.W.2d 229 (Tex. App.--Corpus Christi 1989, no writ) and Prudential Securities,
Inc. v. Marshall, 909 S.W.2d 896, 898 (Tex. 1995), for the proposition that in light of the decree's
arbitration clauses, a change in conservatorship must be resolved by arbitration. These cases,
however, addressed broad arbitration clauses. In Merrill Lynch, the arbitration clause provided that
the employee "agreed to arbitrate any dispute, claim or controversy that may arise between me and
my firm, or a customer, or any other person, that is required to be arbitrated under the rules,
constitutions, or by-laws of the organizations with which I register." Merrill Lynch, 783 S.W.2d at
230. Similarly, in Prudential Securities, Inc., the arbitration clause provided that the employee
agreed to arbitrate, "any dispute, claim or controversy that may arise between [them and the
securities firm]." Prudential Securities, Inc., 909 S.W.2d at 897. These cases are distinguishable
from the narrow arbitration clauses found in the parties' agreement concerning joint managing
conservatorship. 

 The Mitchells' divorce decree incorporated the parties' agreement to serve as joint
managing conservators. The two arbitration clauses in their agreement address only specific issues
within the framework of the parties' joint managing conservatorship--residency of the child and
disputes regarding shared rights or duties and periods of possession. Philip's request to be appointed
sole managing conservator is a request that the court change the entire framework of the
conservatorship. Notably absent from the decree is a broadly worded clause that all disputes relating
to the child would be resolved by arbitration. Also absent from the decree is a clause providing
specifically that any party seeking to change the framework from joint conservatorship to sole
managing conservatorship shall resolve the issue by arbitration. Without a specific agreement to
arbitrate an issue there is no authority to require parties to arbitrate. See Ikon Office Solutions, Inc.
v. Eifert, 2 S.W.3d 688, 696 (Tex. App.--Houston [14th Dist.] 1999, orig. proceeding) (arbitration
clause covered only disputes related to employee's termination and claims at issue not related to
termination). Courts may not expand upon the terms of the decree's arbitration clauses by reading
into such clauses a voluntary, consensual agreement to arbitrate where one otherwise does not exist. 
See In re Glazer's Wholesale Distributors, Inc., No. 05-99-01685-CV, 2001 Tex. App. LEXIS 4401,
at * 21-22 (Tex. App.--Dallas June 29, 2001). 

 The decree's arbitration clauses address only changes in the terms and conditions
under the joint conservatorship; they do not encompass a request to change the type of
conservatorship. We hold that the arbitration clauses in the decree do not encompass Philip's claim
that the joint managing conservatorship be changed to a sole managing conservatorship. This claim
is subject to litigation.


Philip Mitchell's Alternative Pleadings

 Alternatively, Philip requests that in the event he is not designated sole managing
conservator that as a joint managing conservator he be awarded the right to determine the child's
residence. Under the decree, the parties agreed that Patricia would be the joint conservator with the
right to determine the child's residence. 

 The right to establish a child's primary residence is a shared right for parents who are
joint managing conservators. See Tex. Fam. Code Ann. § 153.133(a)(1) (West Supp. 2001). As
joint conservators, they may decide between themselves and designate which parent will have the
exclusive right to establish the child's primary residence. Id. On the contrary, in a sole managing
conservatorship, the sole managing conservator has the exclusive right to decide the child's primary
residence. See Tex. Fam. Code Ann. § 153.132(1) (West Supp. 2001) (rights of sole managing
conservator). 

 Philip's alternative pleading, unlike his claim to change the conservatorship
framework, requests that the court modify the terms and conditions of the parties' joint
conservatorship. Both arbitration clauses encompass this alternative claim. As the right to
determine the child's residence is a shared right for joint conservators, the arbitration clause in the
decree providing that the parties would arbitrate "any disagreements between the parties relating to
a jointly-shared right or duty" encompasses this claim. Additionally, the arbitration clause in the
decree providing that "either party may, at any time propose a change in the residence of the child"
directly addresses this alternative claim. We hold that Philip's alternative request to modify the
rights of the joint managing conservators is encompassed by both arbitration clauses and is not
subject to litigation. 

 Philip also alternatively requests that in the event he is not designated sole managing
conservator, the court modify the shared rights and duties of the parties and the possession periods
each has with the child within the framework of the joint managing conservatorship. The arbitration
clause in the decree that provides that "any disagreements between the parties relating to a jointly-shared right or duty, and/or periods of possession of and access to the child, shall be resolved
through binding arbitration" directly encompasses this request. We hold that Philip's request for a
modification of possession periods or of any other shared rights and duties under a joint managing
conservatorship are directly within the scope of the decree's arbitration clauses and are not subject
to litigation.


Conclusion

 We affirm the district court's order denying arbitration of Philip's request to be
named the sole managing conservator of the child because that claim is not encompassed by the
arbitration clauses in the divorce decree. To the extent the district court's order denying arbitration
includes Philip's alternative claims requesting various modifications of the parties' rights under the
joint managing conservatorship, we reverse the order and render judgment that all modifications to
the parties' rights under the joint managing conservatorship are subject to the arbitration clauses in
the divorce decree and must be resolved by binding arbitration, not litigation. 



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed in Part; Reversed and Rendered in Part

Filed: July 31, 2001

Do Not Publish
1.   For example, there was also no agreement that the parties arbitrate child support issues. These
issues were originally determined by the district court and any requested change would be
determined by the court.



STYLE="font-family: Times New Roman">

 Alternatively, Philip requests that in the event he is not designated sole managing
conservator that as a joint managing conservator he be awarded the right to determine the child's
residence. Under the decree, the parties agreed that Patricia would be the joint conservator with the
right to determine the child's residence. 

 The right to establish a child's primary residence is a shared right for parents who are
joint managing conservators. See Tex. Fam. Code Ann. § 153.133(a)(1) (West Supp. 2001). As
joint conservators, they may decide between themselves and designate which parent will have the
exclusive right to establish the child's primary residence. Id. On the contrary, in a sole managing
conservatorship, the sole managing conservator has the exclusive right to decide the child's primary
residence. See Tex. Fam. Code Ann. § 153.132(1) (West Supp. 2001) (rights of sole managing
conservator).